**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**JAMES HUFF,
#23055,**

                **Plaintiff,**

**vs.**                                         **Case No. 18-cv-1160-MJR**

**JACQUELINE LASHBROOK,
KIMBERLY BUTLER,
WARDEN PAGE,
SALVADOR GODINEZ,
DONALD STOLWORTHY,
JOHN BALDWIN,
JOHN DOES 1-3, and
JOHN DOE,**

                **Defendants.**

## <u>MEMORANDUM AND ORDER</u>

**REAGAN, Chief Judge:**

    Plaintiff James Huff, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Western Illinois Correctional Center ("Western"), brings this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Plaintiff's claims relate to his prior incarceration at Menard Correctional Center ("Menard"). According to the Complaint, officials violated Plaintiff's constitutional rights by subjecting him to cruel and unusual conditions of confinement and by acting with deliberate indifference to his health and safety. More specifically, Plaintiff claims that Menard's drinking water was contaminated with lead and otherwise "tainted," endangering his present and future health and safety.

    This matter is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A, which provides:

(a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–

(1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations in the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff was housed at Menard from approximately 1997 through December 2017. (Doc. 1, pp. 7, 9). According to the Complaint and attached exhibits, at some point during his incarceration at Menard, Plaintiff was suffering from recurring H. pylori bacterial infections. (Doc. 1, pp. 9, 17). In approximately November 2016, Plaintiff was seen by Dr. Trost (not a defendant in this action). *Id.* Dr. Trost told Plaintiff his recurrent infections "came from the tainted water and the lead piping system, which was dissolving into the water." (Doc. 1, p. 17). He also told Plaintiff to try to avoid drinking Menard's water. (Doc. 1, p. 9). Plaintiff

"immediately" filed an emergency grievance; however, the grievance went unanswered. (Doc. 1, pp. 9, 17). In November 2017, Plaintiff filed a second grievance. *Id.* In that grievance, Plaintiff inquired about that status of his first grievance and reiterated concerns about contaminated water at Menard. (Doc. 1, p. 17). Approximately one month later, Plaintiff was transferred to Western.

Plaintiff now claims that officials at Menard were deliberately indifferent to his health and safety, as well as the health and safety of all prisoners, "by failing to replace their lead piping system where the lead is and has been for decades, dissolving into the water." (Doc. 1, p. 6). Plaintiff claims that lead pipes were "banned in the U.S. decades ago," violate the Environmental Protection Agency's standards, and are known to cause "cancers, bacterias [sic], viruses, infections, diseases, and many other illnesses." (Doc. 1, p. 8).

In connection with this claims, Plaintiff has named the following officials:

**Current and Former Wardens**
- Jacqueline Lashbrook – Assistant Warden/Warden, 2014 to the present
- Kimberly Butler – Former Warden, 2014 - 2016
- John Does 1-3 – Unknown Former Wardens, "early and mid 2000s"
- Page – Former Warden, 1990-2000

**Current and Former IDOC Directors**
- John Baldwin – IDOC Director
- Donald Stolworthy – Former IDOC Director
- Salvador Godinez – Former IDOC Director
- John Doe – Former IDOC Director, 1990s

Plaintiff alleges that all of the defendants (1) knew about the lead pipes; (2) knew that Menard's drinking water was contaminated with lead; and (3) failed to take corrective action. (Doc. 1, pp. 7-9). Plaintiff also claims that all of the defendants "had certified plumbing, piping, and water specialists working for them," and therefore knew that "lead piping systems were banned in the United States, [were] seriously harmful to humans, and were or was unconstitutional." (Doc. 1, p. 8).

In support of the allegation that lead piping is present at Menard and that Defendants knew lead was present in Menard's drinking water, Plaintiff cites to *Carroll v. DeTella,* 255 F.3d 470 (7th Cir. 2001). In *Carroll*, the Court of Appeals for the Seventh Circuit affirmed summary judgment in connection with a prisoner's claim that the drinking water at Menard was contaminated with lead in excess of EPA standards. In affirming summary judgment, the Court of Appeals explained as follows:

> The plaintiff's complaint about the lead in the water at Menard can also be disposed of quickly. The record establishes that the presence of lead in the water is due to the corrosion of the water pipes, which are made of lead that dissolves in the water—but only when the water is still, as it is overnight, when no one is using it. When the water is flowing, the lead in the pipes does not dissolve. So the plaintiff was told to let the water run for a few minutes in the morning before drinking it, which eliminates the hazard, though it is only an interim precaution while the prison arranges to have the pipes treated or replaced. All this is remote from cruel and unusual punishment.

*Carroll,* 255 F.3d at 471-72.

Plaintiff seeks injunctive relief, declaratory relief, and monetary damages, on behalf of himself and other similarly situated inmates at Menard.

### Discussion

**Count 1 -**     Eighth Amendment claim against Defendants for endangering Plaintiff's present and/or future health by exposing him to drinking water contaminated with lead between 1997 and December 2017.

**Count 2 -**     Eighth Amendment claim against Defendants for exhibiting deliberate indifference to Plaintiff's medical needs after Plaintiff complained that drinking water contaminated with lead or that was otherwise "tainted" was causing him to suffer from recurring H. pylori bacterial infections.

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. The designation of these claims

does not constitute an opinion regarding their merits. **Any claims that are not identified above are considered dismissed without prejudice from this action.**

### Count 1

The Constitution requires correctional officials to house inmates under humane conditions and to provide them with adequate food and water, among other basic needs. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A denial of drinkable water, even for a few days, may be actionable. *Atkins v. City of* Chicago, 631 F.3d 823, 830 (7th Cir. 2011). The Eighth Amendment, furthermore, prohibits deliberate indifference to an inmate's health and safety, *Farmer*, 511 U.S. at 845. This extends to both present and future health risks. *See Helling v. McKinney*, 509 U.S. 25 (1993). Prison officials violate an inmate's constitutional rights in conditions-of-confinement cases where the alleged deprivation is "sufficiently serious" (objective standard) and (2) the officials act with deliberate indifference (subjective standard). *Farmer,* 511 U.S. at 834. In the case at bar, given the early stage of this litigation, Plaintiff's allegations satisfy both prongs.

Plaintiff claims that Menard's water distribution system contains lead pipes, and that, for decades, Menard's water supply has been contaminated with dangerous levels of lead. According to the Complaint, Plaintiff, who was housed at Menard for approximately twenty years, is now at risk for numerous illnesses, including cancer. Plaintiff also claims that the contaminated water caused or exacerbated his recurring H. pylori infection.[1] This is sufficient to satisfy the objective prong.

An inmate made similar allegations in *Robinson v. Page*, 170 F.3d 747, 748 (7th Cir. 1999). In *Robinson*, an inmate at Tamms Correctional Center filed a civil rights action charging

---

[1] The Court notes, as does Plaintiff, that H. pylori is a bacterial infection. It is not clear how lead contamination could cause or worsen a bacterial infection. However, the Court will not attempt to resolve this question at the pleading stage.

that there was lead in the prison's drinking water. The district court dismissed the complaint pursuant to 42 U.S.C. § 1997e(e) based on a lack of physical injury. The Seventh Circuit reversed the dismissal, finding that the inmate did not have to show present physical injury to proceed on his lawsuit. Similarly, in *Helling v. McKinney*, 509 U.S. 25, 33 (1993), a case concerning an inmate's exposure to environmental tobacco smoke, the Supreme Court observed:

> This was one of the prison conditions for which the Eighth Amendment required a remedy even though it was not alleged that the likely harm would occur immediately and even though the possible infection might not affect all of those exposed. We would think that a prison inmate also could successfully complain about demonstrably unsafe drinking water without waiting for an attack of dysentery.

509 U.S. at 33.

The Court also finds that the Complaint sufficiently alleges deliberate indifference with respect to Defendants (the current and former wardens and IDOC directors in place during Plaintiff's incarceration at Menard). According to the Complaint, these individuals knew the water was contaminated with unsafe levels of lead (because of interactions with contractors working at Menard and/or because of a prior lawsuit), but failed to take corrective action. Plaintiff also claims that, in November 2016, he submitted a grievance pertaining to the allegedly contaminated water, raising concerns about present and future health risks, but received no response.[2]

Further, because Plaintiff's claim involves "potentially systemic," rather than "clearly localized," constitutional violations, the wardens and IDOC directors who were in place during Plaintiff's incarceration at Menard may be held to answer for the alleged problems with contaminated water at the facility. *See* e.g., *Antonelli v. Sheahan*, 81 F.3d 1422, 1428-29 (7th Cir. 1996). *See also Riley v. Illinois,* 2014 WL 3396531, * 4 (N.D. Ill. July 10, 2014) (allowing

---

[2] Obviously, this particular allegation only suggests knowledge as to the defendants who were employed at the time the grievance was submitted and who were aware of the same.

claim pertaining to potentially systemic water contamination at Stateville to proceed against the warden and IDOC director); (*Truidalle v. Taylor,* 2011 WL 6780690, *6 (N.D. Ill Dec. 23, 2011) (same). A more fully developed record may refute Plaintiff's allegations. However, at this early stage, Defendants must respond to the Complaint.

The Court notes that the Seventh Circuit has considered actions involving lead contaminated water at Menard on at least two prior occasions. *See Stanley v. Page,* 44 f. App'x 13 (7th Cir. 2002) (class action pertaining to conditions of confinement at Menard, including contaminated water); *Carroll v. DeTella,* 255 F.3d 470 (7th Cir. 2001). In both actions, the Appellate Court affirmed summary judgment in favor of Menard officials. However, both actions were decided at the summary judgment stage, on the basis of a more fully developed record. Thus, given the early stage of this litigation, these actions do not necessarily preclude Plaintiff's claim. *See White v. Monohan,* 326 F. App'x 385, 387 (7th Cir. 2009)(distinguishing *Carroll* on this basis and reversing dismissal of Eighth Amendment claim for contaminated water).

### Count 2

According to the Complaint, in November 2016, Plaintiff submitted a grievance pertaining to his recurring H. pylori infections. Plaintiff claimed that Dr. Trost told him his repeated infections were due to Menard's water which was contaminated with lead or otherwise "tainted." Plaintiff did not receive a response to this grievance, and officials took no action on his behalf. He submitted a follow-up grievance in November 2017. Shortly after submitting the follow-up grievance, Plaintiff was transferred to Western.

Generally, the denial or mishandling of a grievance – standing alone – is not enough to violate the United States Constitution. *See, e.g., Owens v. Evans*, 878 F.3d 559, 563 (7th Cir.

2017); *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *George v. Abdullah*, 507 F.3d 605, 609 (7th Cir. 2007). That being said, an official may be subject to liability if he or she "knows about unconstitutional conduct and facilitates, approves, condones, or 'turn[s] a blind eye' to it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (citing *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir. 1996).

Considering the above authority, the Court will allow Count 2 to proceed as to Butler and Lashbrook (the warden defendants who may have been employed at the time of Plaintiff's complaint and who may have been on notice regarding the same). However, Count 2 shall be dismissed without prejudice as to John Does 1-3, Page, Baldwin, Stolworthy, Godinez, and John Doe.

### Class Action

Plaintiff purports to bring this suit as a class action. (Doc. 1, p. 6). To the extent that Plaintiff is seeking class treatment and certification, the request is **DENIED**. *See Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (holding it would be plain error to permit imprisoned *pro se* litigant to represent his fellow inmates in a class action). The Federal Rules permit class actions to be maintained only if the class representative "will fairly and adequately protect the interests of the class," FED. R. CIV. P. 23(a)(4), and "[e]very court that has considered the issue has held that a prisoner proceeding *pro se* is inadequate to represent the interests of his fellow inmates in a class action." *Lee v. Gardinez*, No. 11-cv-570-GPM, 2012 WL 143612, at *1 n.1 (S.D. Ill., Jan. 18, 2012) (quoting *Craig v. Cohn*, 80 F. Supp. 2d 944, 946 (N.D. Ind. 2000) (internal citations and quotation marks omitted)).

## Pending Motions

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) is **REFERRED** to United States Magistrate Judge Stephen C. Williams.

## Identification of Unknown Defendants

Plaintiff will be allowed to proceed against the unknown defendants. These individuals must be identified with particularity before service of the Complaint can be made on them. Also, where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009).

For that reason, Menard's current warden, Jacqueline Lashbrook, in her official capacity, shall be responsible for responding to discovery (informal or formal) aimed at identifying these unknown defendants. Guidelines for discovery will be set by the United States Magistrate Judge. Once the names of the unknown defendants are discovered, Plaintiff must file a motion to substitute each newly identified defendant in place of the generic designation in the case caption and throughout the Complaint.

## Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** shall proceed against **LASHBROOK, BUTLER, PAGE, BALDWIN, STOLWORTHY, GODINEZ, JOHN DOES 1-3** (former wardens, "early and mid 2000s"), and **JOHN DOE** (IDOC Director, "1990s") .

**IT IS ORDERED** that **COUNT 2** shall proceed against **LASHBROOK** and **BUTLER**. **COUNT 2** is **DISMISSED** without prejudice as to **PAGE, BALDWIN, STOLWORTHY,**

**GODINEZ, JOHN DOES 1-3** (former wardens, "early and mid 2000s"), and **JOHN DOE** (IDOC Director, "1990s")**.**

The Clerk of Court shall prepare for Defendants **LASHBROOK, BUTLER, PAGE, BALDWIN, STOLWORTHY,** and **GODINEZ**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant and the Court will require Defendant to pay the full costs of formal service to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file, nor disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to United States Magistrate Judge **Williams** for disposition, as contemplated by Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c),

*should all the parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: July 24, 2018**

**s/ MICHAEL J. REAGAN**
**District Judge**
**United States District Court**
